Energy Corporation v. Federal Energy Regulatory Commission, and we'll hear from Mr. Hicks. Thank you, Your Honor, and may it please the Court, George Hicks for Appellant Gulfport Energy Corporation. This case arises out of orders that FERC issued in a conceded attempt to evade the bankruptcy code's automatic stay and to issue findings under the Mobile Sierra Doctrine that Rover could use if Gulfport eventually filed for bankruptcy and if Gulfport sought to reject its filed rate contracts with Rover in that bankruptcy. Gulfport objected that FERC's conduct was procedurally and substantively flawed, but FERC proceeded anyway, and sure enough, after Gulfport subsequently filed for bankruptcy and sought to reject those contracts, Rover invoked FERC's orders and has contended and continues to contend that they have preclusive effect and that they prohibit Gulfport from But FERC has now conceded in its April 20th letter to this Court that the Court's recent decision in In Re Ultra Resources, quote, governs Gulfport's bankruptcy proceeding, and for that reason, the orders, quote, have no effect in that proceeding. Counsel, why does that not moot the issue that we have before us? I'm sorry, Your Honor? Why does that not moot the issue before us? What else do we need in order to resolve the issue? Well, Your Honor, you're on the right track because given FERC's concession that this case is moot, we absolutely agree that the challenged orders have no effect in Gulfport's bankruptcy proceeding, and this Court should explicitly recognize that, but the way to ensure that the orders have no effect is to follow through on that concession that this case is moot and vacate the challenged orders under the Munsingware Doctrine, which would bring this of, admittedly, agency mischief and regulatory shenanigans to an inglorious end. As this Court knows, the Munsingware Doctrine holds that vacater is generally required when a dispute has become moot due to circumstances not attributable to the appealing party. This Court, the Supreme Court, and numerous other circuits have applied Munsingware to barge lines versus United States, 368 U.S. 324, this Court's decision in Mississippi Power and Light versus FERC, 724 Fed Second 1197, the D.C. Circuit's decision in American Family Life Assurance, 129 Fed Third 625, and the 11th Circuit's decision in Atlanta Gas Light Company versus FERC, 140 Fed Third 1392. Most recently, in the PG&E case from 2020, the 9th Circuit, invoking Munsingware, vacated FERC orders strikingly similar to the challenged orders here. As here, FERC had determined that a debtor seeking to reject a filed rate contract must also obtain FERC's approval before ceasing performance under that contract. PG&E petitioned for review of those orders, but the case became moot during the 9th Circuit proceedings, and in a decision at 829 Federal Appendix 751, the 9th Circuit held, first, that FERC's orders, quote, directly affected PG&E's rights within the bankruptcy proceeding, and second, that under the Munsingware Doctrine, the orders had to be vacated, which would, quote, prevent them from adversely impacting PG&E down the road. All of that is true here. It might be a somewhat related question in terms of the impact of the orders at issue in this case. Where are we in the bankruptcy as of today, the progress of the bankruptcy? Your Honor, what has happened is, almost immediately after the orders here were issued by FERC, Rover moved to withdraw the reference concerning the rejection proceeding. The bankruptcy court denied that, but then they objected to the district court, and they made the arguments in both of those situations that these orders had preclusive effect in the order without any reasoning. About over a year ago, Judge Hughes withdrew the reference, and it has been sitting there for a year. But the bankruptcy itself has not progressed towards any type of plan or any distribution or any sorting of creditor claims or anything of that sort? Your Honor, the bankruptcy plan has been confirmed. The reimbursement plan has been confirmed. The only thing that is left here is the rejection proceeding, which is a $100 million dispute, but it's very much live in the district court. And as Rover concedes and continues to assert in its letter to this court, it is actively still arguing that these orders have preclusive effect in that rejection proceeding. And there's two specific ways in which they have preclusive, they argue have preclusive effect. The first is simply that we simply can't reject the contracts or stop performing under them because the FERC orders are preclusive as to rejection. But the second also is simply the legal proposition in these orders, which has been completely refuted by the Ultra decision, if not the previous Merritt decision, that we need to get FERC's approval to cease performing under the rejected contracts or even to get its So that is actively happening in the rejection proceeding right now. So if you want to follow the PG&E approach to all this, you would find that because of the mootness that these orders have to be vacated under Munsingware, which is the entire purpose of the Munsingware doctrine is to sort of clear away the underbrush and make sure even though FERC has explicitly conceded correctly that these orders have no effect in that bankruptcy proceeding, the purpose of the Munsingware doctrine is just to make sure that there isn't any such residual effect that could harm the appealing party, which is Gulfport here. Now, you could also simply, you know, proceed to the Merritts in this case because we think we are aggrieved in light of what's going on in the bankruptcy proceedings and the PG&E case noted this as well and simply hold that these orders are patently improper under the Ultra decision. We had argued that they were already improper under the prior Merritt decision and we argued that before FERC and FERC proceeded and then the Ultra decision came out, which broadly reaffirmed Merritt and it also essentially held that these sorts of pre-petition proceedings that Rover went to do here to beat the automatic stay, they're completely unnecessary because number one, Ultra says it is entirely sufficient for FERC to participate in the proceedings in the bankruptcy court. In fact, that's how it's supposed to work. That's how FERC can provide its input. It doesn't need to conduct its own proceedings and issue orders, et cetera, but what Ultra also said is that the mobile Sierra standard that Rover went to FERC to try to get a determination on, even though we had never even brought that up, that's just not part of the bankruptcy rejection standard according to Ultra. Instead, what the bankruptcy court does is it balances the equities and it takes into account the public interest, but that doesn't mean the mobile Sierra standard, which never occurred in that case and yet this court said that the rejection there was perfectly fine. What the public interest is in that equitable determination is that the court must, quote, ensure that rejection does not cause any disruption in the supply of the regulated commodity. And of course, the entire point of that pre-petition FERC hearing that Rover rushed to go get was to decide if rate modification is warranted. But Merent and then Ultra have made clear, crystal clear, that rejection is different from rate modification. So there's simply no need whatsoever for these pre-petition proceedings to take place. And frankly, they're a really bad idea. It encourages these rushed, truncated proceedings before FERC. So for example here, FERC gave the parties 21 days to submit opening and rebuttal briefs, no live testimony, no assessment of live credibility, and it said it would give a decision within 14 days. There was 239 pages of evidence and argument by Gulfport, 189 pages by Rover, that's over 400 pages, and FERC issued a determination in 14 days without any live testimony. That's not, I just don't think that's a very good way to go about determining findings in the first place, much less findings that have no relevance to the rejection proceeding. And it also forces producers like Gulfport to have to be dealing with parallel track litigation. We've got a FERC proceeding and then a petition for review of those proceedings in a court of appeals, while you've also potentially got a bankruptcy proceeding going on that is also going up to a district court and then also going up to a court of appeals, it might be different courts of appeals, it's really just no way to run a railroad. It also is very procedurally skewed for the producer, because again, the producer like Gulfport did not even ask to go into the FERC proceedings, but it sort of has to prove a negative because Rover and other pipelines are going to FERC saying, asking for a determination that the public interest does not require modification, and that's not something that we've ever thought was even relevant, and ULTRA proves that. But really, I think the worst thing about these sort of pre-petition proceedings, which again are completely unnecessary after ULTRA, is the very idea that FERC can assert jurisdiction without there being any sort of Chapter 11 filing or anything along those lines, I think sends a dangerous signal to markets, to stakeholders, when you've got a company that may have signaled that it is in financial distress, that may have signaled that it has some financial problems, but to have a federal agency essentially give its official imprimatur to the idea that yeah, there's pretty much going to be a bankruptcy, so we're going to go ahead and assert jurisdiction and make these findings, I mean, I think that that sends a very bad signal and it makes things very difficult for the producer who's trying to avoid bankruptcy. The distinction, I mean, you can still prevail, I don't know how we're going to decide this, but if we were to agree with your overall position, we could still say that FERC had jurisdiction but that the decision it rendered under, pursuant to that jurisdiction, was wrong. I mean, that result is just as helpful to you as if we were to say that FERC had no jurisdiction at all. That's absolutely right, Judge Smith, and certainly, and particularly after ULTRA, I think that the second approach that you describe there is, you know, certainly a path of least resistance. I mean, I don't think that there's any dispute, really. I don't think FERC is certainly disputing at this point. I think it's waived the white flag when it comes to the applicability of ULTRA and this circuit's law to its conception of rejection and modification that it has sort of suddenly been pushing in the last few years. I don't see Ms. Banta carrying a white flag there on the desk with her, but we'll find out when we hear from her. And I doubt she will, you know, have very good arguments for FERC, and I know that Rover has a different position than FERC, but I do think that it is pretty clear here that whether you want to take it from the mootness angle and vacate the orders under Munsingware, which is what the PG&E court did, which I believe was Judges Van Dyke, Bumate, and Callahan in the Ninth Circuit, or you can proceed to the merits given the agreement to Gulfport based on the ongoing rejection proceedings and Rover's efforts to use these orders affirmatively against Gulfport and to try to prevent any rejection whatsoever and proceed to the merits and simply vacate on those grounds in light of ULTRA. So one narrow line that we would need to follow, it seems to me, again, if we were to agree with your general position, is that we have no authority over Judge Hughes or the bankruptcy court, and we're only dealing with FERC, so we would have to be careful in how we structured it so that we weren't trying to interfere with a proceeding that is not part of this appeal. I understood, Your Honor, and I think the way that you could do that, and I absolutely agree that you don't want to go outside the bounds of your jurisdiction or this case, is first of all to explicitly accept FERC's concession that the orders here have no effect in the bankruptcy proceeding, which is, I think, clearly correct, but I think that also proceeding to vacate the orders, whether it's on Munsingware grounds or whether it is on the merits, is a way, simply, I mean, that is well within your authority, and then Judge Hughes or this court, should it get up to this level in that proceeding, can take into account the fact that these orders have no effect there, and there will be a rejection proceeding right along the lines of what this court ordered in the ULTRA decision. Is PG&E in the same procedural posture as this case, in other words, directly from a FERC order? The PG&E in the Ninth Circuit, it had consolidated, there was a FERC order petitioned for review, and then there was also a bankruptcy proceeding, and they both went up to the Ninth Circuit, and the Ninth Circuit consolidated, but it disposed of everything in that decision, that this decision on the FERC orders, which it vacated. Thank you, Mr. Higgs. You've saved time for a vote. Ms. Banta? Good morning. Carol Banta for the Commission, and I'll begin with a few clarifying points about the paper hearing order, which is the only order on review in docket number 21-60200, I believe, the second petition. To clarify, it is not the Commission's position that the paper hearing order is moot. The declaratory order and the rehearing order of that declaratory order in the first docket, the 21-60017, those are the ones that we believe have been mooted by the ULTRA decision because they can have no effect in the bankruptcy case. The paper hearing order was not a declaratory order. It was the Commission initiating a Natural Gas Act Section 5 proceeding on its own motion, which the statute expressly provides for in 15 U.S.C. 717d. It initiated that on its own initiative under Section 5, and it did it for several purposes, but the first one it cited was the recognition that in the bankruptcy case, separate and apart from what the Commission had said in the declaratory order about the Commission's position on its own concurrent parallel jurisdiction that's now moot. In the bankruptcy case, both Merit and now ULTRA have made clear that the bankruptcy court must invite FERC's participation, and FERC, the Commission, held its paper hearing and issued its Mobile Sierra analysis with the contemplation that that would be its input into the bankruptcy case, and that still stands. What the bankruptcy court chooses to do with that input is between the Gulfport Bankruptcy Court, the ULTRA decision, and potentially this court on appeal. But that remains the Commission's input into that proceeding. It did have other reasons I can get into for doing that, but I do want to point out to Judge Englehart's question, it is true that the Ninth Circuit had both the appeal from the bankruptcy court and the petition for review from FERC orders consolidated. There was no such paper hearing order in that case. So when it was moot, it was essentially like the declaratory orders in this case. It was not, it did not involve such a paper hearing order. Now, the Commission did act in the face of a looming bankruptcy, and one of the reasons it cited in addition to being its input in the impending bankruptcy case was also the Commission noted that we might be able to help avert this. If we find that there's a reason to modify these contracts, we might be able to, if not in this case, just in cases, in similar situations, we might be able to avert that bankruptcy. That's in the paper hearing order, so that was another reason that the Commission did it. Again, that was within its Section 5 authority to do. A number of arguments that Mr. Hicks has raised today with regard to the process and the policy reasons for doing that, none of that was raised in this appeal. None of it was briefed. It was raised on objections before the Commission, and the Commission answered it, but nothing about the merits and nothing about the process has been raised. The only mention of the paper hearing order in this petition for review has been that it decided essentially nothing, which goes to our aggrievement argument, but all of the arguments about the process being improper, I mean, that's a different case. And the Commission did answer it below, but it's not before the Court, and we haven't raised it, so that's new. I'd also, just to the extent that the Commission is being characterized as shenanigans and trying to avert the automatic stay, I would point out that these orders were issued prior to, very close to, but prior to a bankruptcy case existing, and I'm not aware of a reason that the Commission would have assumed that that bankruptcy would be in this circuit. The Gulf Court is headquartered in Oklahoma and incorporated in Delaware, so I don't know why we would be assuming that they would file their bankruptcy in Houston and be subject to merit. It could have been a variety of other circuits, principally the 10th or the 3rd. So when the Commission issued these orders, it wasn't thumbing its nose at the 5th Circuit because it had no reason that I'm aware of to assume that that's where it would be. In addition, it's not about trying to get in before the automatic stay. Now, these were unequivocally, indisputably pre-petitioned orders, although they were very close to the bankruptcy happening, but the automatic stay, the Commission is subject to the exception under Section 362b-4 of the Bankruptcy Code. What the Commission cited in its orders, and we discussed in our brief, was not the automatic stay. There have been a number of bankruptcy courts that went beyond the automatic stay, exercising their equitable authority under Section 105 of the Bankruptcy Code, to enact sweeping injunctions that in a number of cases have been reversed as unreasonable. The 6th Circuit had some rather harsh language about the scope of the bankruptcy court's injunction that had prevented the Commission from doing anything at all. I believe the original merit case had a bankruptcy court that was reversed by the district court on appeal from the bankruptcy with that injunction, and the Calpine case in New York. Similarly, the district court reversed an overly broad injunction against the Commission that the bankruptcy court had enacted. So when the Commission says that we're trying to act when we see that this is coming and we want to try to be helpful and we also want to be able to do our public interest analysis appropriately, there's nothing wrong with noting that a number of bankruptcy courts have erroneously precluded the Commission from doing that in a timely manner and later been reversed. So that's the Commission's thinking coming in. So of course, the paper hearing order, if I have my numbers right in my head, was four days before the bankruptcy filing, six days before the contract rejection. It was, according to Gulfport's own disclosure statement in its bankruptcy, it was about two months after they had started negotiating a prepackaged bankruptcy plan with their noteholders and their debtor-in-possession financing lenders. And they also, in that disclosure statement, say that at least some of the pipelines, principally Rockies Express, they had gone to Rockies Express to try to renegotiate their contract. Of course, Rockies Express, which is not involved in this case, was the first one to come to the Commission and file a petition for a declaratory order before the other pipelines came in and followed suit, and Rover is the only one left standing at this point before this court. But the idea that this was hypothetical when the Commission acted quickly and very close to the bankruptcy that was in the works for some time, to suggest there's something nefarious about that defies the record. And I would note with the declaratory orders, we do believe those are moot. We do also believe that this court or that the petitioner cannot meet their burden of showing aggrievement as to any of the three orders, because as I said, the only argument they have for the paper hearing order was that they don't think it decided anything. And they made the same argument principally with the declaratory orders, that they didn't think that those orders decided anything, so how do you show that you're aggrieved by those orders in that instance? And so we submit that this court doesn't have a live case or controversy before it on any of the three orders, but certainly on the declaratory and rehearing orders. So we think that the court shouldn't reach the merits because it doesn't reach out and give advisory opinions on cases in which there's no live case or controversy. So if we were to agree with your position, what would the final paragraph of our opinion say in summarizing the result? Tell us in two or three sentences or whatever you think it should say if you were writing it. Well, the first option would be that the petitioner has not demonstrated aggrievement as to any of the three orders, and the petition is dismissed. The second option, we think the court, that we think that one is justified. The second option would be that the declaratory and rehearing orders in the petition for review in docket number 21-60017, I hope that I have that right, is moot, and if the court decides that Munsingwear applies, it could vacate those orders, but that the paper hearing order on review in 21-60200 is not moot. The merits have not been challenged in the petition for review, nor has the process the commission followed, so I guess the petition would be denied. Tell me why the case would be moot? As to the declaratory orders? Because before there was a bankruptcy, the commission took the position that if and when there was a bankruptcy, the commission would have parallel concurrent jurisdiction so that if there were to be a cessation of performance, there would be contract rejection by the bankruptcy court. To be clear, the commission said in its orders, we're not trying to supplant the bankruptcy court. We believe that they're parallel, and the best explanation how that might work, I would point to Judge Griffin's dissent in the Sixth Circuit first energy case, because that's approach he took to how it would work, that to cease performance, you reject the contract in bankruptcy, but you also have to get approval from the commission if you wish to cease performance, so that was the commission's position in those orders. That was before there was a bankruptcy case in the Fifth Circuit, but even when there was a bankruptcy case in the Fifth Circuit, the commission thought that there was some question about the continued viability of merit, which I will not relitigate today, because FERC litigated that in ULTRA, and this court has decided it. So when this court decided ULTRA and removed the commission's questions about merit, that means that in the Gulfport bankruptcy case right now, that judge is bound by ULTRA and will apply ULTRA, and if that judge does not apply ULTRA properly, that will be between that judge and whichever court is next, the district court or . . . But ULTRA didn't decide the case between the litigants in this case, and as I understand mootness, the previous adjudication has to relate to the parties to the later litigation. Well, I think the way we look at it, I mean, if it were directly on all fours, it would decide the case on the merits, I would think. It might be moot, but the way we look at it . . . I mean, it may be that that's precedent that would control the merits of the case, but certainly, I don't understand why it's moot. Well, it's moot because the commission's orders do not have any effect. They're not going to happen. No one is going to come to the commission to seek approval for cessation of Gulfport's contract because per ULTRA, they don't need to, and that the bankruptcy court is empowered to make that decision. So, the way the court could look at it is, what relief can this court give? Whether the orders are overturned or vacated, they have no effect. The bankruptcy court is going to do what the bankruptcy court is going to do, and that will either be compliant with ULTRA or not, but it will not be the commission's role. At this point, the paper hearing order is the commission's input as to its view of the contract, and per ULTRA, the bankruptcy court will take that into account. Hopefully, it will take it into account properly, but again, that is between the bankruptcy court and whichever courts review its decision. So, there's no relief that this court would give an advisory opinion saying that the declaratory orders were wrong would make no difference at this point because they're not operative in that bankruptcy or in the Fifth Circuit. And so, that's our position that the court need not reach out and decide an advisory case. The court has no further questions. I'll see the rest of my time. Thank you. Thank you, Ms. Banta. Mr. Grister? First, I want to thank the court for postponing, for setting this special session so I could get back on my feet. I hope you're doing all right. Two hours a day physical therapy, but I'm ready to be with . . . I think my firm's ready for me to be done with it. Two main things I want to point out that are different between this case from Morant and ULTRA. First, FERC finished what it was going to do before any bankruptcy was filed. The question is, what if Gulfport . . . Question for my able opponent. What if Gulfport hadn't filed bankruptcy? Would FERC have had authority to do what it did? Surely, the answer is yes, that's what it does, just in reasonable rates and looks at public interest. Would this court have had jurisdiction under the Natural Gas Act to review that decision? Surely, it would. So, the question presented in this case is, if you file bankruptcy after FERC completes its process, does that void FERC's authority and void this court's subject matter jurisdiction? I don't see why it does. The second thing is, that's different, is that this happened during a nationwide collapse of the markets. This was mid-2020, as you recall. Hotels were closed, courts were closed, restaurants were closed, people weren't traveling. Briefly in April of 2020, the price of oil dropped below zero. That's the definition of a collapsed market. There were no buyers at any price. That did not happen in the gas market, but gas markets were nationwide. Prices collapsed. Price of gas today at the Henry Hub is five times what it was when this proceeding was filed. So, this was a big issue. Morant is a microeconomic issue. We got one contract, and we got one bankrupt party. Is this going to affect the supply of gas to the city of New Orleans or wherever? That's a microeconomic issue. What FERC faced in 2020, and the reason Rover filed this petition, was because there was a macroeconomic issue. There were hundreds of potential bankruptcies. Chesapeake, one of the largest gas suppliers in the country, declared bankruptcy. Now, in that context, what is, in my view, the dangerous thing would be saying, in that context, you have a market collapse, you have government lockdowns nationally. FERC cannot act because there's no uncertainty. FERC has to just let everybody file their bankruptcy petitions, wherever they're going to file, and we get 25, 50 different bankruptcy judges say, is this a good or a bad idea to let everybody out, and on what basis, when there's the potential that, because of the potential effects on the pipeline markets. Pipelines don't take, as a general matter, my client doesn't. We don't take title. We just pass through at a certain price. We built a 700-mile pipeline. We're counting on a certain amount of revenue from that, and everybody can get around it. That makes a difference. Now, the question arises, okay, so what happens after Altra and Morant to the finding on the public interest? It doesn't disappear. There's a difference between having no effect and being dispositive. There's a lot of things this court sees, administrative agency, exhaustion, maybe certified questions from state supreme courts. There's a lot of circumstances where somebody else has, makes a ruling. It's binding on the parties. It's not necessarily binding on this court or the federal courts because the analysis is different for the bankruptcy judge. Bankruptcy judge has to balance with the public interest with the need to hurry up the reorganization. That's different from whether the public interest in a macro sense is going to be served by allowing everybody to, you know, we're losing money. We'll cancel this contract. We'll abandon our long-term commitments, and that has a major effect. Now, whether Judge Hughes will be persuaded by that or not remains to be seen, but it's not of no effect, and if it's, if that order is, this is where we disagree with FERC. If that order is vacated, we start over. We start over also in a situation where FERC cannot call for witnesses and companies to intervene and tell us what you think. Tell us, tell us, is this going to be a long-term problem? And the only way to do that is what FERC did in this case. There are lots of orders that get suspended or modified or vacated or this, that, and the other when somebody files for bankruptcy. That does not void the orders. That does not mean they were entered without subject matter jurisdiction, and it may still be. This Court certainly can say, as you say, Judge Smith, this Court can certainly say we think FERC made an error. We don't, obviously, since we won, but that doesn't mean that FERC had no authority to do this or that the order should be vacated. We, we think, this doesn't happen that often. We think FERC's, obviously, but market, international, global collapses of markets don't happen often either, and in that circumstance, we think FERC was exactly right to send a message to everybody, and this was certainly, we don't, certainly don't think it's moot either. My client lost half a billion dollars, and we want some of that back. We think, and we've ordered it, Judge Hughes, that FERC's findings about the long-term's effect in that circumstance will be persuasive, but they may not be, but they're certainly not nothing. We have an advantage to them, and we agree they have a disadvantage because of that finding in bankruptcy court, because that may prove persuasive. That's my time, unless you have questions. Thank you, Mr. Mister. Your case is under . . . Oh, yes, you have rebuttal. That's right. I'm forgetting. Go right ahead. Okay, thank you, Your Honor. Just a few points in rebuttal. First, I'm surprised to hear Ms. Banta trying to draw a distinction between which orders are moot and which are not, because the FERC's letter to this court on April 20th could not have been clearer that its position is that all of the orders are moot. On page one, these consolidated cases should be dismissed as moot because of ultra-resources. Page three, this court's decision in ultra-resources has rendered the petitions for review moot. Page four, the commission's Gulfport orders have no effect in that rejection procedure. There's no distinction at all drawn between the orders in its letter, and I think there's a good reason for that, because all of the reasons that would apply in ultra would apply to all of the orders here, and I think, simply, I think that the fact that FERC is trying to find some way, any way, to keep these orders alive is indicative that, whether it's on mootness, Munsingware grounds, or on merits grounds, that they need to be vacated. Second point I'd like to make is I heard Ms. Banta say that this was never about trying to avoid the automatic stay, and again, I want to refer you to a number of statements by FERC that absolutely refutes that suggestion. The first is on page 17 of its initial declaratory order. Holding an evidentiary hearing now will allow the commission to issue an opinion prior to the potential imposition of a stay by a bankruptcy court. Well, I don't see anything nefarious about that. Parties do that all the time, private parties, if they see bankruptcy coming, as long as they don't engage in some kind of preferential treatment or something like that in advance of bankruptcy petition. They know the stay's going to be there, and they want to avoid it. Well, Your Honor, I don't disagree that a coming automatic stay changes conduct, but I do think that it's problematic here, for the reasons I noted in my opening about hastening a slide into bankruptcy, or simply the idea that FERC is going to countenance these sort of pre-petition proceedings on the idea of simply of a pipeline trying to avoid an automatic stay. And on that note, I want to... So there are other instances in the briefing, and I just want to point them out. Page 2 of the rehearing order, page 29 of the order on the paper hearing, FERC's brief at 28 and 29 and 33 in this court. So just to be clear that this was, you know, certainly premised on avoiding the automatic stay. But on that note about avoiding the stay, I think I heard Ms. Banta refer to both Merent and First Energy, the Sixth Circuit case, as somehow giving motivation to the idea that this had to be done. I think those cases are being mischaracterized. In both of those cases, there were broad injunctions imposed by a bankruptcy court, but what the courts of appeals did on appeal, both this court and in First Energy and the Sixth Circuit, they actually kept the part of the injunction that precluded FERC from requiring continued performance of a rejected contract. And of course, that's the relevant part of all this. The question in all of this has been whether a producer or a party with a FERC jurisdictional contract that wants to reject that contract in a bankruptcy proceeding has to also obtain the approval of FERC to cease performance under that rejected contract. The position that FERC took after Merent and for about 10 years was, no, you don't have to get our permission. And then about three years ago, in the Next Era order, which ironically was the order that gave rise to the PG&E Ninth Circuit decision and was sort of the genesis for FERC's new position, it started saying, yes, you actually do have to get approval from us if you want to cease performance. And they continued that position. And I thought until the ULTRA decision came out, and I think I'm hearing today that they're still trying to draw some distinctions, but I just don't think you can do that. I think ULTRA is very clear, certainly on the legal positions that were taken in the orders, in this case, all of the orders, that they simply cannot survive. And whether you want to vacate them on Merit's grounds or on Munsingwear grounds in light of FERC's concession, repeated concession, in its letter to this court, that all of the orders and all of these petitions in review are moot. These orders simply cannot stand. There are no further questions. Thank you. All right. Thank you. Your case is under submission and the court is in recess.